Jeffrey T. Bell (SBN 184876)
Rick Ma (SBN 306994)
Law Offices of Jeffrey T. Bell
11001 Valley Mall, Suite 300
El Monte, California 91731
Telephone: (626) 280-8787 | Fax: (626) 226-5699
Service@jtblawyer.com

Attorney for Plaintiff
Aliquantum International, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIQUANTUM INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>vs.<br><br>VIVID ORANGE CORPORATION; DOES 1 – 100, INCLUSIVE;<br><br>Defendants. | Civil Action No.: 5:18-cv-02578-GW (GJSx)<br><br>**PLAINTIFF ALIQUANTUM INTERNATIONAL, INC'S NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>[Declaration of Wayne Lin; Declaration of Julie Huang; Declaration of Rick Ma; and [Proposed] Default Judgment filed concurrently herewith]<br><br>**Hearing:**<br>Date:   May 23, 2019<br>Time:   8:30am<br>Courtroom:  9D<br><br>The Honorable George H. Wu<br>Courtroom 9D<br><br>Complaint Filed: December 12, 2018<br>Trial Date: |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on May 23, 2019 , at 8:30am, or as soon thereafter as this matter may be heard by the above-entitled Court, located at 350 West 1st Street, Los Angeles, CA, 90012, Courtroom 9D, 9th Floor, Plaintiff Aliquantum International, Inc ("Aliquantum") will move the Court for an entry of default judgment against Defendant Vivid Orange Corporation ("Vivid Orange")

-1-
**PLAINTIFF ALIQUANTUM INTERNATIONAL, INC'S NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

for trademark violation statutory damages in the sum total of Four Hundred Thousand Dollars ($400,000) and attorneys' fees in the amount of Five Thousand Dollars ($5,000) and post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a). Aliquantum also seeks entry of a permanent injunction prohibiting Defendants from further infringement of Plaintiffs' intellectual properties. The clerk has previously entered the default of said defendant on January 30, 2019.

By this Notice of Motion and Motion for Default Judgment, the Memorandum of Points and Authorities attached thereto, the Declarations of Wayne Lin and Rick Ma, and exhibits attached thereto, Aliquantum request that a default judgment be entered based on the following points:

1. Defendant is not an infant or incompetent person or in the military service or otherwise exempted under the Servicemembers Civil Relief Act;

2. Defendant was properly served with the Complaint;

3. Defendant has not appeared in the action.

4. This Notice and Motion for Default Judgment, along with all supporting papers is being served on Defendants on March 28, 2019 by placing true and correct copies thereof in sealed envelopes addressed to Defendants at the same address where service of process was completed.

5. Plaintiffs elect statutory damages under the Lanham Act.

6. Plaintiffs are entitled to judgment against Defendants based on violation of 17 U.S.C. § 1125 et seq. (copyright infringement).

7. Plaintiffs do not elect to proceed to judgment for damages on its claims for trademark dilution, false designation of origin, or unfair competition.

8. The principal amount of the judgment sought as against Defendants is statutory damages in the amount of Four Hundred Thousand Dollars ($400,000.00) for Defendants' liability to Aliquantum as set forth in the accompanying Memorandum of Points and Authorities, supporting declarations and exhibits, and as authorized by 15 U.S. §1117.

9. Plaintiffs also seek attorneys' fees and costs in the amount of Five Thousand Dollars ($5,000.00) and entry of a permanent injunction prohibiting Defendants from further infringement of any of Plaintiffs' intellectual properties. Plaintiffs further seek interest on the judgment calculated pursuant to

28 U.S.C. § 1961(a).

This motion is based on this Notice of Motion, Motion for Entry of Default Judgment and accompanying Memorandum of Points and Authorities, the Declarations of Wayne Lin and Rick Ma, and exhibits attached thereto, the exhibits and evidence to be presented at the hearing hereon, the pleadings, records and papers on file herein and such other matters and evidence as may be presented at or before the hearing.

DATED: March 28, 2019                    LAW OFFICES OF JEFFREY T. BELL

By: _____
Jeffrey T. Bell
Rick Ma
Attorneys for Plaintiff

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................................**5**

**FACTUAL BACKGROUND**................................................................................................**7**

**ARGUMENT**..........................................................................................................................**8**

    I.    DEFAULT JUDGMENT IS PROPERLY ENTERED AGAINST DEFENDANT..........................................8

        A.    *Aliquantum's Complaint Sufficiently Charges Defendant with Trademark Counterfeiting*..............9

        B.    *All of the Other Eitel Factors Have Been Met* ...................................................................12

    II.    ALIQUANTUM HAS MET THE PROCEDURAL REQUIREMENTS FOR ENTRY OF A DEFAULT JUDGMENT......13

    III.    ALIQUANTUM IS ENTITLED TO A PERMANENT INJUNCTION ....................................................17

    IV.    ALIQUANTUM IS ENTITLED TO STATUTORY DAMAGES OF $400,000.00 BASED ON DEFENDANT'S WILLFUL INFRINGEMENT OF ITS TRADEMARKS ........................................................................14

    V.    ALIQUANTUM IS ENTITLED TO INTEREST ON THE JUDGMENT ................................................17

    VI.    ALIQUANTUM IS ENTITLED TO ATTORNEY FEES AND COSTS ...................................................17

**CONCLUSION** .....................................................................................................................**18**

# TABLE OF AUTHORITIES

**Cases**

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir. 1991) .................................................................................................................. 10

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) ..................................................... 10

*Burger King Corp. v. Mason*, 855 F.2d 779 (11th Cir. 1988) ..................................................... 16

*Carte Blanche (Singapore) Pte. v. Carte Blanche International* 888 F.2d 260 (2d Cir. 1989) ................. 17

*Danning v. Lavine,* 572 F.2d 1386 (9th Cir. 1978) ..................................................................... 9

*Eitel v. McCool,* 782 F.2d 1470 (9th Cir. 1986) ........................................................... 8, 9, 12, 13

*F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228 (1952) .................................... 16

*Geddes v. United Financial Group*, 559 F.2d 557 (9th Cir. 1977) ............................................... 9

*Kloepping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786 at (N.D. Cal. February 14, 1996) ................ 9

*Levi Strauss & Co. v. Blue Bell Inc.*, 778 F.2d 1352 (9th Cir. 1985) ........................................ 10

*Lindy Pen Co, v. Bic Pen Co.*, 982 F.2d 1400 (9th Cir. 1993) .............................................. 14, 16

*Louis Vuitton Malletier, et al. v. Viet,* 211 F. Supp. 2d 567 (E.D. Penn. 2002) .......................... 16

*M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073 (9th Cir. 2005) .................................. 10, 11

*Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950) ..................................................... 12

*Nishimatsu Construction Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975) ................ 9

*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990) ..................................... 16

*PepsiCo Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172 (C.D. Cal. 2002) ....................................... 12

*Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552 (9th Cir. 1992) ............................................. 16

*State of Idaho Potato Commission v. G &T Terminal Packaging, Inc.*, 425 F.3d 708 (9th Cir. 2005) .... 15

*TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) ....................................... 12

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) ..................................................... 10

*Vigil v. Walt Disney Co.*, 1995 U.S. Dist. LEXIS 15560, at (N.D. Cal. Oct. 16, 1995) ................... 10

**PLAINTIFF ALIQUANTUM INTERNATIONAL, INC'S NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

**Statutes**

15 U.S.C. § 1114 .................................................................................................... 9

15 U.S.C. § 1114(a) ............................................................................................. 11

15 U.S.C. § 1115(a) ............................................................................................. 10

15 U.S.C. § 1116(a) ............................................................................................. 12

15 U.S.C. § 1117 .................................................................................................. 14

15 U.S.C. § 1117(c) .................................................................................. 12, 14, 15

15 U.S.C. §§ 1051 ................................................................................................. 9

15 U.S.C. 1125(c) ................................................................................................ 12

28 U.S.C. § 1961(a) ............................................................................................. 17

Fed. R. Civ. P. 54(c) ............................................................................................ 13

Fed. R. Civ. P. 55(b) ............................................................................................ 13

Fed. R. Civ. P. 8(d) ............................................................................................... 9

Fed. R. Civ. P. 55(a) ............................................................................................ 13

## INTRODUCTION

Defendant Vivid Orange, a California Corporation ("Defendant") knowingly engaged in the purchase, distribution, offering for sale, and/or sale of counterfeit goods to the general public infringing on Plaintiff Aliquantum International, Inc.'s ("Aliquantum") license for San-X Co. Ltd Corporation's ("San-X") world famous trademarks. Defendant has failed to appear in response to valid and effective service of process upon it.

Defendant's default has deprived Aliquantum of the ability to prove up the specific amount of damages caused by Defendant's wrongful conduct. Therefore, Aliquantum relies on the statutory damages provisions contained in the Lanham Act for counterfeiting. While Defendant's conduct warrants imposition of damages for willful counterfeiting and liable for up to two million per trademark counterfeited, Aliquantum limits its request to $200,000 for two separate trademark violations for which it has attached specific evidence of infringement. Declaration of Wayne Lin ("Lin Decl.") at ¶¶ 13-14.

| TRADEMARK | CERTIFICATE NO. | REPRESENTATIVE IMAGE | EXAMPLE OF INFRINGING USE |
|---|---|---|---|
| RILAKKUMA | 4,449,172 | (Rilakkuma logo) | (image) |
| SUMIKKOGURASHI | 5,625,738 | Sumikkogurashi | (image) |

Aliquantum seeks judgment, including an award of statutory damages in the amount of $400,000.00 pursuant to § 1117(c) of the Lanham Act and attorney fees in the amount of $5,000. In addition, Aliquantum seeks entry of a permanent injunction prohibiting Defendant and its representatives from further infringement of San-X's trademarks.

## FACTUAL BACKGROUND

Aliquantum is a corporation duly organized and existing under the laws of the state of California with its principal place of business in Ontario, California. Complaint ("Compl.") at ¶ 4. Aliquantum is

-7-
**PLAINTIFF ALIQUANTUM INTERNATIONAL, INC'S NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**


the sole and exclusive distributor for all San-X products in the United States. *Id.* at ¶ 7. San-X products are known worldwide for their high-quality plush toys and other merchandise. *Id.* at ¶ 8.

In 2017, Aliquantum signed an agreement with San-X ("Distribution Agreement") and became the exclusive distributor for certain San-X products, including Rilakkuma in the United States, Canada, and Mexico. Lin Decl., ¶ 4, Ex A. On March 2, 2018, Aliquantum received power of attorney to pursue "legal action against infringers and illegal importers of products involving Rilakkuma, Sumikkogurashi, Sentimental Circus, Mamegoma, and Kutushita Nyanko brands." Lin Decl., Ex B.

San-X registered the Rilakkuma trademark on December 10, 2013, Registration No. 4,449,172 in Class 28 for plush toys. Lin Decl. at ¶ 10; Ex. C. The Sumikkogurashi trademark was registered on December 11, 2018, Registration No. 5,625,738 in Class 28 for plush toys. Lin Decl. at ¶ 10; Ex. C. The trademarks have been registered with the USPTO pursuant to the Lanham Act and are collectively referred to herein as the "Trademarks". Compl. at ¶ 8.

Defendant is a California corporation with its principal place of business in Rowland Heights, California. *Id.* at ¶ 5. Defendant has willfully sold, offered to sell, marketed, distributed, and advertised the sale of counterfeit San-X products. *Id.* at 12, 18. Aliquantum has examined Defendant's products and determined them to be counterfeit. Lin Decl. at ¶¶ 12-14. The counterfeit goods are of substantially inferior quality compared to the authentic products and would cause significant damage to Aliquantum by decreasing the sale of authorized products and tarnish the reputation of both Aliquantum and San-X. Compl. at ¶ 23.

## ARGUMENT

### I.    DEFAULT JUDGMENT IS PROPERLY ENTERED AGAINST DEFENDANT

In *Eitel v. McCool,* 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit outlined the following factors to determine whether to grant default judgment and "[i]n applying this discretionary standard, default judgments are more often granted than denied.":

(1) the substantive merits of plaintiff's complaint;

(2) the complaint's sufficiency;

(3) the amount of money at stake;

(4) the possibility of prejudice to plaintiff if relief is denied;

(5) the possibility of dispute as to any material facts;

(6) whether default resulted from excusable neglect; and

(7) the policy of the Federal Rules favoring decisions on the merits.

*Id.* at 1470-72.

Each factor shall be analyzed below.

### A. Aliquantum's Complaint Sufficiently Charges Defendant with Trademark Counterfeiting

The first two *Eitel* factors, involving the substantive merits of the claim and the sufficiency of the complaint, require that Plaintiff's allegations "state a claim upon which [it] may recover." *Kloepping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786 at (N.D. Cal. February 14, 1996), *citing Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978). Upon a defendant's default, the factual allegations of the complaint, other than those relating to the amount of damages sustained, are deemed admitted. Fed. R. Civ. P. 8(d); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Nishimatsu Construction Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

The Complaint sufficiently pleads Aliquantum's claim for trademark counterfeiting pursuant to 15 U.S.C. §§ 1051, *et seq*. San-X is the current record owner of the registered trademark "Rilakkuma" and "Sumikkogurashi" in the United States and abroad in both character and stylized forms for numerous classes of goods, including plush toys. Lin Dec., ¶¶ 9-11, Ex. C. At the time of Defendant's actions that are subject to this lawsuit, Aliquantum was the sole exclusive licensee of certain San-X trademarks, including Rilakkuma and Sumikkogurashi. Compl. at ¶ 7, 25, 26, 33. In addition, Aliquantum is authorized to take legal actions against any infringers of its rights to those Trademarks. Lin Decl. at ¶ 8, Ex B.

Defendant has willfully sold, offered to sell, market, distributed, and advertised the sale of counterfeit San-X products. Compl. at ¶¶ 12, 18. Defendants' willful, intentional and unauthorized use of the Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Infringing Products sold by the Defendant among the general public. *Id.* at 19. These allegations state claims for trademark counterfeiting upon which Aliquantum may recover.

**PLAINTIFF ALIQUANTUM INTERNATIONAL, INC'S NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

To succeed on a claim under the Lanham Act, a plaintiff must establish that its mark is valid and has been infringed. 15 U.S.C. § 1114. Registration of a mark on the principal register is "prima facie evidence... of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce..." 15 U.S.C. § 1115(a); *Vigil v. Walt Disney Co.*, 1995 U.S. Dist. LEXIS 15560, at (N.D. Cal. Oct. 16, 1995); *Levi Strauss & Co. v. Blue Bell Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) Aliquantum was the sole exclusive licensee, and therefore the owner, of certain San-X trademarks, including Rilakkuma and Sumikkogurashi. Compl. at ¶¶ 7, 25, 26, 33. In addition, Aliquantum is authorized to take legal actions against any infringers of its rights to those Trademarks. Lin Decl. at ¶ 8, Ex B.

The test for infringement of a federally registered trademark under the Trademark Act of 1946 ("Lanham Act") is whether the alleged infringing act creates a likelihood of confusion. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992); *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1454-55 (9th Cir. 1991). In determining likelihood of confusion, the Ninth Circuit has adopted the *Sleekcraft* test, balancing the following factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the mark; and (8) likelihood that the parties will expand their product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-54 (9th Cir. 1979). In addition, when the alleged infringer knowingly adopts a mark similar to another's, some courts presume that the public will be deceived. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005). These factors all demonstrate Defendant's infringement of the San-X Trademarks:

1. *Strength of the Trademark*: San-X products are known worldwide for their high-quality plush toys and other merchandise. Their Trademarks are distinctive and are widely recognized by the general consuming public of the United States. Compl. at ¶¶ 8, 41.

2. *Proximity of goods*: The likelihood of confusion is heightened where, as here, the goods at issue are "related or complementary." *M2 Software, Inc.*, 421 F.3d at 1082. Aliquantum has used the Trademarks in commerce throughout the United States in connection with the manufacture, distribution,

provision, offering for sale, sale, marketing, advertising, and promotion of San-X products. Compl. at ¶ 9. Without Aliquantum's authorization or consent, with knowledge of Aliquantum's prior rights in the Trademarks, and with knowledge that Defendant's counterfeit products bear counterfeit trademarks, Defendant intentionally reproduced, copied, and/or colorably imitated Aliquantum's exclusive use of marks and/or used spurious designations that are identical with, or substantially indistinguishable, from one or more of the Trademarks on or in connection with the import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of the Infringing Products. Compl. at ¶ 26.

3. *Similarity of the Marks*: Defendant's use of the Trademarks has caused, and is likely to continue to cause, confusion, mistake, and deception among the general public as to the origin of the counterfeit, and is likely to deceive consumers, the public, and the trade into believing that the counterfeit products originate from, are associated with, or are otherwise authorized by Aliquantum, in violation of 15 U.S.C. § 1114(a). Compl. at ¶ 27. Defendant reproduced, copied, and/or colorably imitated the Trademarks that are identical with, or substantially indistinguishable, from one or more of the Trademarks. *Id.* at ¶ 26.

4. *Evidence of Actual Confusion*: Defendant's use of the marks has caused, and is likely to continue to cause, confusion, mistake, and deception among the general public as to the origin of the Infringing Products. *Id.* ¶ 34.

5. *Type of Goods and Care Likely to be Exercised by the Purchaser*: Defendant has duplicated Aliquantum's products in order to delude and confuse the consumers and is likely to deceive consumers, the public, and the trade into believing that the Infringing Products originate from, are associated with, or are otherwise authorized by Aliquantum. *Id.* at ¶ 34.

6. *Defendant's Intent in Selecting the Mark*: Defendant's intention to confuse the public is self-evident. When a person knowingly adopts a mark identical to another's mark, the Court may infer that person's intent to confuse. *M2 Software*, 421 F.3d at 1085 (willful use creates a presumption of public deception).

7. *Likelihood of Expansion of Product Lines*: Defendant is operating an illegitimate business practice whose existing product line consists of counterfeit goods, therefore the likelihood of expansion

of product lines is irrelevant.

Thus, San-X, through Aliquantum, is a valid authorized trademark holder and has sufficiently alleged in its pleadings a likelihood of confusion under the *Sleekcraft* factors for its trademark infringement claim.

**B. All of the Other *Eitel* Factors Have Been Met**

1. *Amount at Stake*: Under the third *Eitel* factor, the Court must consider the amount of money at stake. *Eitel,* 782 F.2d at 1471-72. In the alternative to profits and damages, the Lanham Act provides for statutory damages in a case involving the use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods and services, or any willful violation under section 43(c) of the Lanham Act. 15 U.S.C. 1125(c). The plaintiff may elect to recover statutory damages in the amount of not less than $1,000 or more than $200,000 per mark per type of goods sold, offered for sale, or distributed. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that the use of the counterfeit marks was willful, the plaintiff may be granted an award of statutory damages of not more than $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed. 15 U.S.C. § 1117(c)(2). In addition, the Lanham Act gives the Court "[p]ower to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a); see also *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177-78 (C.D. Cal. 2002). Through this motion, Aliquantum seeks permanent injunctive relief and $400,000.00 in statutory damages against Defendant as provided for in 15 U.S.C. § 1117(c).

2. *Possibility of Prejudice*: The fourth *Eitel* factor considers whether Aliquantum will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471-72. In light of the fact Defendant failed to properly answer and appear in response to Aliquantum's Complaint, thereby admitting the averments of the Complaint, Aliquantum will likely suffer prejudice if default judgment is not entered.

3. *Possibility of Dispute*: The fifth *Eitel* factor requires the Court to consider the possibility of dispute as to any material facts in the case. Again, upon entry of default, all well-pled facts in the Complaint are taken as true except those relating to damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987); Fed. R. Civ. P. 8(d). Here, Aliquantum filed a well-pled Complaint

alleging the facts necessary to establish all of its claims. As Aliquantum's factual allegations are presumed true, no genuine dispute exists as to any material facts.

   4. *Possibility of Excusable Neglect*: Under the sixth *Eitel* factor, the Court considers the possibility that Defendant's default resulted from excusable neglect. Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present its objections before a final judgment is rendered. *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950). Defendant was served the Summons and Complaint on January 2, 2019. Ma Decl. at ¶ 3. Defendant has not filed a responsive pleading, or otherwise properly appeared in this action. *Id*. at ¶ 5. Defendant has had ample time to try to resolve this matter, but has elected not to properly appear. Defendant's voluntary decision to allow default to be entered contradicts any argument for excusable neglect. The facts of this case are dissimilar from those in *Eitel*, in which the defendant's failure to answer constituted excusable neglect because the defendant believed the litigation was over, due to a final settlement agreement that subsequently dissolved. The defendant in *Eitel*, soon thereafter, filed an answer and counterclaim, even though it was beyond the 20-day period. *Eitel*, 782 F.2d at 1472. The Defendant in the present case has failed to act despite having all opportunity to do so, with full knowledge that a lawsuit was filed against it, and that it was its responsibility to respond. Ma Decl. at ¶¶ 3-5.

   5. *Policy for Deciding on the Merits*: The seventh *Eitel* factor takes into account the preference of the Federal Rules for deciding cases on the merits. *Eitel*, 728 F.2d at 1472. Under Fed. R. Civ. P. 55 (a), default judgments are allowed. Here, Defendant failed to properly file an answer to Aliquantum's Complaint or to otherwise appear in the action. Allowing Defendant, who failed to defend this action, to proceed to trial would greatly prejudice Aliquantum. Therefore, judgment against Defendant is proper at this time.

II.   **ALIQUANTUM HAS MET THE PROCEDURAL REQUIREMENTS FOR ENTRY OF A DEFAULT JUDGMENT**

   Fed. R. Civ. P. 55(b) provides for a court-ordered default judgment following entry of default by the court clerk under Rule 55(a). Aliquantum has complied with Fed. R. Civ. P. 54(c) and 55(a). In the pending action, Aliquantum served Defendant on or about January 2, 2019. Ma Decl. at ¶ 3. Defendant

failed to properly respond to the Complaint even after being given an opportunity by the Court to do so. *Id*. at ¶ 5. Further, Defendant is not a minor, incompetent lacking adequate representation or in the military or otherwise exempt under the Servicemembers Civil Relief Act. *Id*. at ¶¶ 7-8. Aliquantum does not request relief that differs from or exceeds what it prayed for in the Complaint.

### III. ALIQUANTUM IS ENTITLED TO STATUTORY DAMAGES OF $400,000.00 BASED ON DEFENDANT'S WILLFUL INFRINGEMENT OF ITS TRADEMARKS

Section 1117 of the Lanham Act allows a plaintiff to elect either statutory damages or actual damages for trademark infringement. 15 U.S.C. § 1117. Aliquantum elects statutory damages. Since Defendant acted willfully, Aliquantum is entitled to increased statutory damages awards of up to Two Million Dollars per counterfeit mark per type of goods or services sold, offered for sale, or distributed pursuant to the recently amended Lanham Act. 15 U.S.C. § 1117(c)(2). Aliquantum is seeking a reasonable award under the Lanham Act of Four Hundred Thousand Dollars ($400,000.00) for the blatantly willful infringement of two Trademarks by Defendant.

**1. Defendant's Conduct Was Willful**

Defendant has not elected to dispute any of Aliquantum's allegations in the Complaint. As willful infringement carries a connotation of deliberate intent to deceive, courts generally apply forceful labels such as "deliberate", "false", "misleading", or "fraudulent" to conduct that meets this standard. *Lindy Pen Co, v. Bic Pen Co.*, 982 F.2d 1400, 1406 (9th Cir. 1993). Here, Aliquantum has alleged in its Complaint, Defendant's willfulness. Compl. at ¶¶ 27, 36, 43, 55.

**2. Defendant Willfully Infringed Upon San-X's Trademarks**

San-X's ownership of these trademarks is uncontested as a result of Defendant's default. The Aliquantum Trademarks were unlawfully used in the Defendant's counterfeit merchandise. Compl. at ¶¶ 17-22. This evidence indicates Defendant's infringement of San-X's trademarks by systematically selling unauthorized product incorporating the Trademarks. Thus, Aliquantum is entitled to an award based upon the trademarks infringed.

**3. Aliquantum Is Entitled to $200,000.00 for Each of the Two Trademark Infringements Based on Defendant's Willful Counterfeiting of The Trademarks**

Aliquantum seeks Two Hundred Thousand Dollars ($200,000.00) per trademark for a total of Four Hundred Thousand Dollars ($400,000.00) for Defendant's infringement. This is within the statutory limits provided for pursuant to the Lanham Act for one trademark and within the limits applicable to acts of innocent infringement. This amount is properly awarded given (i) Defendant's willful conduct; and (ii) Defendant's disregard for the process of this Court. Section 1117(c) provides, in pertinent part:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of title 15) in connection with the sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subjection (a) of this section, an award of statutory damages for any such use in connection with the sale, or distribution of goods or services in the amount of-
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just, offered for sale, or distributed, as the court considers just.

15 U.S.C. §1117(c)(1)-(2).

In determining such an award, the plaintiff must establish that: Defendant intentionally used a counterfeit mark in commerce- defining "counterfeit mark" as, an identical, non-genuine mark, in use by the plaintiff and registered in the same class of goods complained of without plaintiff's prior authorization; knowing the mark was counterfeit; in connection with the sale, offering for sale, or distribution of goods; and its use was likely to confuse or deceive. *State of Idaho Potato Commission v. G &T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).

Defendant's use constituted counterfeiting as it sold unauthorized and counterfeit plushes by using on such merchandise, identical, non-genuine marks, of marks already in use and registered in the proper class of goods by Aliquantum, that were likely to cause confusion or deception to the consuming public with knowledge. Compl. at ¶¶ 17-21; Lin Decl. at ¶¶ 12-14.

Aliquantum was deprived of an ability to obtain discovery from Defendant as to damages and

should not be penalized for Defendant's default. Ninth Circuit authority is controlling that even a lack of actual damages should not bear on whether statutory damages are appropriately awarded. "It is clear, however, that a plaintiff may recover statutory damages "whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336-37 (9th Cir. 1990) citing *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984); *Lindy Pen Co.*, 982 F.2d at 1411 ("an inability to show actual damages does not alone preclude a recovery under section 1117"); *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988) ("a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits under § 35 of the Lanham Act"); *see also Louis Vuitton Malletier, et al. v. Viet,* 211 F. Supp. 2d 567, 583 (E.D. Penn. 2002) ("[I]n cases involving the use of a counterfeit mark, the plain language of the statute affords plaintiffs the right to pursue statutory damages without proving actual damages,"). The requested award of statutory damages reflects the strength and goodwill of the Trademarks against Defendant's counterfeit goods for which San-X is best known.

Plaintiff's request for statutory damages would not be a windfall, but rather is also in line "to sanction and vindicate the statutory policy of discouraging infringement." *Peer Int'l Corp.,* 909 F.2d at 1336-37. "The Supreme Court has stated that 'even for uninjurious and unprofitable invasions of [rights] the court may, if it deems it just, impose a liability within [the] statutory limits' " in furtherance of the important policy of deterrence. *Id*. at 1337 *citing F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952) (copyright context). There can be no serious doubt that the statutory damages scheme in the Lanham Act reflects a consciousness and sensitivity to the plight of rights owners who are otherwise unable to make counterfeiting unprofitable without the availability of such deterrents. Deterrence is particularly important in Internet infringement cases such as this. Aliquantum and other trademark owners are facing a grave threat from infringing sales of their products on Internet sites. The profitability of online piracy makes it attractive for potential infringers. It is practically impossible for trademark owners to sue and pursue every infringer, Thus, the Ninth Circuit has held that it is a "*per se* abuse of discretion to fail to award relief under § 1117 that is adequate to make willful trademark infringement unprofitable." *Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552, 559 (9th Cir.

1992) (discussing trademark damages generally). The only effective means to curb such infringement is to obtain remedies against some existing infringers that are significant enough to persuade others that the risk is not worth the gamble.

Moreover, if this Court were to award Aliquantum only minimal damages, then Defendant in this action, as well as future defendants, would be encouraged to ignore any legal actions taken by Aliquantum against them. The granting of the requested statutory damage award at this time will act to deter Defendant (and others) from violating Aliquantum's trademarks and otherwise violating Aliquantum's rights with relative impunity.

Defendant has chosen to permit the entry of its default. Because of Defendant's default, Aliquantum has been left with no effective choice but to seek an award of statutory damages. Based upon Defendant's systematic, willful and felonious acts, Aliquantum is entitled to an award of statutory damages of Four Hundred Thousand Dollars ($400,000.00) against Defendant.

## IV.  ALIQUANTUM IS ENTITLED TO A PERMANENT INJUNCTION

Aliquantum has alleged in its Complaint, and has presented specific evidence, that Defendant has infringed its trademarks by, *inter alia*, willfully and knowingly distributing, offering for sale and/or selling counterfeit plushes featuring the San-X Trademarks. Compl. at ¶¶ 11-13; Lin Decl. at ¶¶ 12-14. The Complaint further alleges that unless enjoined, said infringements will continue with irreparable harm and damage to Aliquantum. Compl. at ¶ 30.

## V.  ALIQUANTUM IS ENTITLED TO INTEREST ON THE JUDGMENT

Aliquantum is entitled to post-judgment interest. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Post-judgment interest shall be calculated pursuant to the statutory rate based upon date of entry of the judgment. *Id.*; *Carte Blanche (Singapore) Pte. v. Carte Blanche International* 888 F.2d 260, 269 (2d Cir. 1989).

## VI.  ALIQUANTUM IS ENTITLED TO ATTORNEY FEES AND COSTS

Under the Lanham Act, when a violation of the trademark rights set forth in 15 U.S.C. § 1125(a) or (d), or a willful violation of 15 U.S.C. § 1125(c) is established, the court may also award reasonable attorney fees. *Id.* Aliquantum therefore, requests attorneys' fees in the amount of $5,000.

# CONCLUSION

For the foregoing reasons, Aliquantum respectfully requests that it be awarded permanent injunctive relief enjoining Defendant from further violation of its rights. In addition, Aliquantum requests Judgment in Aliquantum's favor in the amount of Four Hundred Thousand Dollars ($400,000.00) in Lanham Act statutory damages, attorney fees in the amount of Five Thousand Dollars ($5,000), and post-judgment interest.

DATED: March 28, 2019                             LAW OFFICES OF JEFFREY T. BELL

By: _____
Jeffrey T. Bell
Rick Ma
Attorneys for Plaintiff

# PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in Los Angeles County, State of California. I am over the age of 18 years and I am not a party to the within action.  My business address is 11001 Valley Mall, Suite 300, El Monte, California, 91731.

On March 28, 2019, I served the forgoing documents(s) entitled:
**PLAINTIFF ALIQUANTUM INTERNATIONAL, INC'S NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT; DECLARATION OF WAYNE LIN; DECLARATION OF RICK MA; DECLARATION OF JULIE HUANG [PROPOSED ORDER]**
Upon the following parties in this action by placing a true and correct copy of the document(s), enclosed in a sealed envelope or package, addressed as follows:
**SEE ATTACHED SERVICE LIST**

[   ]   BY MAIL:  I placed the envelope with postage fully prepaid for collection and mailing, following our ordinary business practice. I am readily familiar with this business's practice for collecting and processing of correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service at El Monte, California.

[   ]   BY OVERNIGHT DELIVERY: I enclosed the document(s) in an envelope or package provided by the overnight delivery carrier with postage fully prepaid and placed the envelope or package for collection and mailing following our ordinary business practice. I am readily familiar with this business's practice for collecting and processing of correspondence for overnight mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the overnight carrier at El Monte, California.

[   ]   BY FACSIMILE:  On today's date, I caused such document(s) to be transmitted to the last known facsimile telephone number of the addressee(s) on the ATTACHED SERVICE LIST, by use of a facsimile telephone number (626) 226-5699. The transmission was reported as complete and without error. A transmission report was properly issued by the sending facsimile machine with a true and correct copy of said transmission report is attached hereto.

[   ]   ELECTRONIC SERVICE:   On today's date, I caused such document(s) to be transmitted to the last known electronic address of the addressee(s) on the ATTACHED SERVICE LIST. The transmission was reported as complete and without error. An electronic confirmation was issued for this transmission. The electronic service was by expressed agreement and/or by Court Order.

[   ]   PERSONAL SERVICE: I personally delivered the document(s) or package to the addressee(s) on the ATTACHED SERVICE LIST.

I declare under penalty of perjury under the laws of the the United States that the foregoing is true and correct.

Executed on March 28, 2019 at El Monte, California.

By:   /s/ William Gonzalez
William Gonzalez

-19-

**PLAINTIFF ALIQUANTUM INTERNATIONAL, INC'S NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

## SERVICE LIST

**Case Name:** Aliquantum International v. Vivid Orange

**Case Number:** 5:18-cv-02578-GW (GJSx)

Vivid Orange Corporation
18186 Colima Road
Rowland Heights, CA 91748
**Defendant Vivid Orange Corporation**

-20-
**PLAINTIFF ALIQUANTUM INTERNATIONAL, INC'S NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**